## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

K.G., individually, and as          1:17-cv-04740-NLH-JS
*guardian ad litem* of R.L.
          Plaintiff,               **OPINION**

          v.

CINNAMINSON TOWNSHIP BOARD OF
EDUCATION,
          Defendant.

---

**APPEARANCES**:

LORI MICHELLE GAINES
ASHLEY N. RICHARDSON
BARGER & GAINES
555 ROUTE ONE SOUTH
SUITE 340
ISELIN, NJ 08830
     On behalf of Plaintiff

ERIC L. HARRISON
JARED SAMUEL SCHURE
JOSEPH D. CASTELLUCCI, JR.
METHFESSEL & WERBEL, ESQS.
2025 LINCOLN HIGHWAY
PO BOX 3012
SUITE 200
EDISON, NJ 08818-3012
     On behalf of Defendant

**HILLMAN, District Judge**

Presently before the Court the are cross-motions for

summary judgment filed by Plaintiff, K.G. on behalf of her minor

daughter, R.L., a child classified as eligible for special

educational services under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and by

Defendant Cinnaminson Township Board of Education. Plaintiff appeals the decision of the administrative law judge ("ALJ") who declined to find that Defendant failed to provide R.L. with a free appropriate public education ("FAPE") in the least restrictive environment, and declined to direct Defendant to reimburse Plaintiff for tuition when Plaintiff unilaterally placed her daughter in an out-of-district private school. For the reasons expressed below, the Court will enter judgment in favor of Defendant.

### BACKGROUND

Plaintiff, K.G., is the mother and legal guardian of R.L., who was thirteen during the relevant time period, and who is classified as eligible for special education and related services. R.L. is diagnosed with Epilepsy and Landau-Kleffner Syndrome, a syndrome which results in language-function deterioration. She also suffers from left-hemisphere epileptic seizures from a condition known as Perisylvian Syndrome caused by a brain fissure. R.L. requires a ketogenic diet that is high in fat and low in carbohydrates. R.L. is also diagnosed with Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder, Autism Spectrum Disorder, language disorder, and emotional lability.

R.L. has received special education and related services since the age of six when she attended her local public school

program in the Berlin Township, New Jersey school district.  She was thereafter placed at specialized, out-of-district programs under the provisions of her IEP from first grade (2010-2011) through October of 2014, when her family moved to Cinnaminson, New Jersey.  Plaintiff continued R.L. at the Quaker School at Horsham ("QSH"), R.L.'s out-of-district placement under the Berlin Township School District's IEP, and Defendant ultimately agreed to continue R.L.'s placement at QSH for the remainder of the 2014-2015 school year.

Because, according to Plaintiff, Defendant still had not proposed any programming or placement for R.L. for the 2015 extended school year or the 2015-2016 school year, Plaintiff provided Defendant with formal, written notice of her intention to unilaterally continue R.L.'s placement at QSH.  Plaintiff contends that even though Defendant scheduled an individualized educational plan ("IEP") meeting on June 3, 2015, Defendant had already predetermined, without input from Plaintiff who is part of R.L.'s child study team, that R.L. would be placed at public school in the district.  Plaintiff claims that Defendant's proposed program was inappropriate and not reasonably calculated to confer a significant and meaningful educational benefit upon R.L.  Plaintiff made this determination based upon private recommendations from the team of professionals working with R.L. who found that R.L. required the specialized programming

3

provided at QSH in order to be appropriately educated.
Plaintiff therefore unilaterally continued R.L.'s placement at
QSH for the 2015 extended school year as well as the 2015-2016
school year.[1]

Plaintiff filed for a due process hearing on June 16, 2015.
The matter was transmitted to the Office of Administrative Law
on September 15, 2015.  Hearing dates were scheduled and the
matter was heard before an Administrative Law Judge ("ALJ"), the
Honorable Joseph A. Ascione, on May 23, June 13, July 22, August
3, and August 15, 2016.  Just prior to the first hearing date,
Defendant convened an IEP meeting on May 5, 2016 to propose
R.L.'s educational program for the 2016-2017 school year.  The
ALJ issued a decision on March 30, 2017 considering both the
June 2015 proposed IEP and the May 2016 proposed IEP.  The ALJ
found that Defendant provided a FAPE in the LRE to R.L. in the
June 2015 IEP and the May 2016 IEP because those IEPs had the
capacity to address R.L.'s educational needs.  The ALJ also
found that Plaintiff denied Defendant the ability to determine
if services for the 2016 extended school year were appropriate.

---

[1] As discussed in more detail below, a parent who believes that a
school district is not providing his or her child a FAPE may
unilaterally remove the child from public school, enroll the
child in private school, and then file a due process petition
seeking reimbursement for the cost of the child's placement in
the alternative school.  Munir v. Pottsville Area Sch. Dist.,
723 F.3d 423, 426 (3d Cir. 2013) (citing 20 U.S.C. §
1412(a)(10)(C)).

The ALJ accordingly denied Plaintiff's claim for private placement for R.L. at QSH, and denied Plaintiff's claims for reimbursement for tuition at QSH for the 2015 and 2016 extended school years and school year 2015-2016.

Plaintiff has appealed the decision of the ALJ to this Court. Plaintiff claims that the ALJ erred by improperly ignoring Plaintiff's expert testimony and reports; by improperly considering testimony about programming that Defendant did not actually propose for R.L.; by improperly holding that Plaintiff denied Defendant an opportunity to modify its proposed educational program for R.L.; and by improperly holding that a determination about appropriateness can never be made unless a student first tries the program.[2] Defendant argues that it fulfilled its obligations to R.L. under the IDEA, and the ALJ's decision must be affirmed. Both parties have moved for summary judgment in their favor.

**DISCUSSION**

A.   **Subject matter jurisdiction**

This Court has jurisdiction over this matter pursuant to 20

---

[2] Plaintiff argues in the introduction of her brief that the ALJ improperly qualified Defendant's witnesses as experts. (Docket No. 16 at 7.) It is clear from the record, however, as well as later on in Plaintiff's brief, that the ALJ did not qualify Defendant's witnesses as experts. (Docket No. 16 at 11.) This issue is discussed in more detail below.

U.S.C. § 1415(i)(2)(A)[3] and 28 U.S.C. § 1331.

**B.    Standard of Review under the IDEA**

Federal funding of state special education programs is contingent on the states providing a "free appropriate public education" to all disabled children.  S.H. v. State-Operated School Dist. of City of Newark, 336 F.3d 260, 264 (3d Cir. 2003) (citing 20 U.S.C. § 1412).  The IDEA is the vehicle Congress has chosen to ensure that states follow this mandate.  Id. (citing 20 U.S.C. § 1400 et seq.)  The IDEA "protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide."  D.K. v. Abington Sch. Dist., 696 F.3d 233, 244 (3d Cir. 2012) (citation omitted).

Once a school district has identified a child who is eligible for IDEA services, it must create and implement an

---

[3] 20 U.S.C. § 1415(i)(2)(A) provides, in relevant part:

Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

Individualized Education Plan ("IEP") based on the student's needs and areas of disability.  Munir v. Pottsville Area Sch. Dist., 723 F.3d 423, 426 (3d Cir. 2013) (citation omitted). School districts are not required to "maximize the potential" of each disabled student, and instead the district must offer an IEP that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." Id. (citations and quotation omitted).  The IDEA also includes a "mainstreaming" component requiring the placement of a student with disabilities in the least restrictive environment ("LRE") that will provide the child with a meaningful educational benefit.  D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 556-57 (3d Cir. 2010).

The IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations. The parent or guardian of a minor student who is denied the rights and procedures set forth in the IDEA is afforded the opportunity to file an administrative complaint.  C.H. v. Cape Henlopen School Dist., 606 F.3d 59, 66 (3d Cir. 2010) (citing 20 U.S.C. §§ 1415(b)(6), (i)(2)).  In New Jersey, this process entails filing a complaint and request for a due process hearing with the New Jersey Department of Education, N.J.A.C. 6A: 14-2.7(c), and the due process hearing is conducted by an ALJ in New Jersey's Office of Administrative Law, N.J.A.C. 6A: 14-

2.7(g).  Aggrieved parties may appeal the ALJ's final decision

by filing a civil action in state or federal court.  20 U.S.C. §

1415(i)(2).

The Supreme Court has directed that a school district's

liability for violations of the IDEA is a two-fold inquiry: (1)

Has the school district complied with the procedures set forth

in the IDEA?; and (2) Has the school district fulfilled its

obligation to provide the student with a FAPE?  C.H., 606 F.3d

at 66 (citing Bd. of Educ. of Hendrick Hudson Central Sch. Dist.

v. Rowley, 458 U.S. 176, 206–07 (1982)).

The district court applies a "modified version of de novo

review."  Munir, 723 F.3d at 430 (quoting L.E. v. Ramsey Bd. of

Educ., 435 F.3d 384, 389 (3d Cir. 2006)).  The reviewing court

gives "due weight" to the underlying administrative proceedings,

with the factual findings from the administrative proceedings to

be considered prima facie correct.  S.H. v. State-Operated

School Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)

(citation omitted) (further explaining that if a reviewing court

fails to adhere to the ALJ's factual findings, it is obliged to

explain why).  "The court is not . . . to substitute its own

notions of sound educational policy for those of local school

authorities."  Id. (citations omitted).  District courts must

accept the hearing officer's credibility determinations "unless

the non-testimonial extrinsic evidence in the record would

justify a contrary conclusion." <u>Shore Reg'l High Sch. Bd. of</u>
<u>Educ. v. P.S. ex rel. P.S.</u>, 381 F.3d 194, 199 (3d Cir. 2004)
(citation omitted). "In this context[,] the word 'justify'
demands essentially the same standard of review given to a trial
court's findings of fact by a federal appellate court." <u>Id.</u>
The burden of proof in a proceeding to receive reimbursement is
placed on the party seeking relief. <u>L.E.</u>, 435 F.3d at 391–92.

### C. Analysis

#### 1. The ALJ's Decision

The ALJ made the following findings of fact:

1.   K.G.'s daughter R.L., age thirteen, presents with a
learning disability, occasioned by her diagnoses of epilepsy
and Landau-Kleffner syndrome.  Her classification of "other
health impaired" entitles her to special-education services.

2.   In  2013, K.G. placed R.L. at QSH prior to moving into
Cinnaminson Township.

3.   Toward the end of 2014, K.G. moved into Cinnaminson
Township. The parties entered a settlement agreement, with the
Board preserving the right to contest that QSH qualified as
the stay-put placement.

4.   Representatives of the Board observed R.L. at QSH on
three occasions in the first half of 2015, and attempted to
test her educational abilities.

5.   The interim agreement and these observations were done
consistently within the procedural parameters of obtaining the
necessary information to complete an appropriate IEP.
Petitioner received compensation for R.L.'s education and
transportation during the time the Board was conducting its
evaluations and assessment.

6.   One of R.L.'s disabilities is manifested in her test
taking. She performs poorly due to her disabilities and
behavioral reticence to take tests. This fact was confirmed by
her own neuropsychologist.

7.   The Board formed the same conclusion, _i.e._, R.L. did not test to her abilities.

8.   Representatives of the Board testified that R.L. said that her mother advised her that she could refuse to answer assessment questions.

9.   In June 2015 the parties met to work on an IEP for the 2015-2016 school year.

10.   The Board prepared a proposed IEP in advance of the meeting.

11.   K.G. met with the child study team for the IEP meeting, but did not provide input at the meeting and requested that she be allowed to submit comment after the meeting. K.G. did not provide comment.

12.   The Board provided an IEP with services similar to the services R.L. had received at QSH, but within district, for school year 2015-2016.

13.   K.G. rejected the Board's suggested placement and continued R.L.'s education at QSH.

14.   Due to medical reasons, R.L. lost thirty class days in 2014 and forty-five class days in 2015.

15.   K.G. failed to cooperate with the Board in working on an IEP.

(Docket No. 1 at 13-15.)

The ALJ made the following legal conclusions:

The issue here is whether the Board provided R.L. with FAPE.   I **CONCLUDE** that the Board attempted to provide FAPE to R.L. in the LRE.   This attempt was thwarted by the parent, who refused to consider placement within the district.   While K.G.'s reservations about a change of placement are understandable, she has presented an insufficient legal basis upon which to direct the school district to maintain R.L.'s program at QSH.

The question of whether R.L. was provided with FAPE by the district covers the 2015-2016 school year and the 2016-2017 school year.

10

I **CONCLUDE** that the Board did provide FAPE in the LRE to R.L. in the June 2015 IEP and the May 2016 IEP because those IEPs had the capacity to address R.L.'s educational needs. The petitioner prevented the Board from addressing R.L.'s needs or adjusting the IEP to meet her needs by depriving it of the opportunity to demonstrate the education available to R.L. at Cinnaminson.

R.L. went to QSH in the summers of 2015 and 2016. The Board agreed to reimburse petitioner through June 30, 2015, and provided an IEP for the 2015-2016 school year. Thereafter this due-process hearing commenced. There was not sufficient proof that R.L. regressed during the months of July and August 2015. I **CONCLUDE** that petitioner is not entitled to reimbursement for sending R.L. to QSH in July-August 2015.

The parties stipulated that the Board would compensate K.G. for placement of R.L. at QSH for school year 2014-2015, without conceding that it was the stay-put placement of R.L. Having concluded that the Board provided FAPE in the LRE in its 2015 and 2016 IEPs, I further **CONCLUDE** that petitioner is not entitled to reimbursement for amounts expended except as previously negotiated between the parties.

As to the question of whether the Board denied FAPE to R.L. during the 2016 extended school year, I **CONCLUDE** that the parent denied the Board the ability to determine if services for the 2016 extended school year were appropriate. Accordingly, the Board attempted to provide FAPE in the LRE for the 2016 extended school year, and K.G. is not entitled to reimbursement for those expenditures.

(Id. at 17-19.)

The ALJ accordingly denied Plaintiff's claim for private placement for R.L. at QSH, and denied Plaintiff's claims for reimbursement for tuition at QSH for the 2015 and 2016 extended school years and school year 2015-2016. (Id. at 19.)

## 2.   Plaintiff's arguments for reversal

### a.   *The ALJ improperly ignored Plaintiff's expert testimony and reports*

Plaintiff argues that even though the ALJ properly declined to qualify Defendant's child study team members as experts, the ALJ erred by heavily relying upon their testimony despite their fact witness status, and improperly discounting Plaintiff's experts.[4]  The Court does not agree.

The ALJ outlined each proffered expert's qualifications and opinions (Docket No. 1-3 at 4-11), and articulated which testimony he found credible and persuasive, while explaining why he discounted other testimony (id. at 11-13).  Even though the ALJ's discussion of the expert testimony is a brief summary in comparison to hundreds of pages of transcribed testimony, the ALJ focused on the main issues of contention for the claims raised by Plaintiff's due process complaint, and pinpointed the relevant evidence to support his decision.

For example, the ALJ noted that Plaintiff's expert, Jeanne Tighe, testified that R.L. had a very low frustration tolerance and could not easily be brought back once she began to shut down, but the ALJ further noted that Tighe's expertise was in the

---

[4] Defendant states the ALJ erred by not qualifying its witnesses as experts, but that error is harmless because of the ALJ's ultimate decision in Defendant's favor.

speech/language area, and not the behavioral/neuropsychological area.  (Id. at 12.)  The ALJ further noted, "Tighe testified to a severe language disorder, but did not note that conclusion in her December 2013 observation of R.L. at QSH.  Her report goes beyond her area of expertise, and makes the conclusory opinion that the Board cannot provide a meaningful educational benefit to R.L. Her testimony does not dissuade this tribunal that the Board needs to be afforded the opportunity to educate R.L."  (Id.)

Plaintiff urges the Court to credit her experts more than the ALJ did, but Plaintiff does not point to other nontestimonial evidence that undermines the ALJ's consideration of those experts' testimony.  The Court cannot credit a witness who expressed a contrary opinion by merely reassessing the same testimony heard by the ALJ.  See Shore Regional High School Bd. of Educ., 381 F.3d at 199-200 (finding that the district court did not give the requisite deference to the ALJ's evaluation of the witnesses' credibility, where both the ALJ and the district court were confronted with conflicting opinions by experts on the question of whether the offered placement constituted a FAPE, but the ALJ had heard the witnesses during a hearing that extended over four days, and the district court simply chose to credit a witness who expressed a contrary opinion without pointing to any "nontestimonial evidence" that undermined the testimony of these witnesses); id. ("We do not suggest that [one

expert] opinion was unworthy of belief or that the testimony of [the other experts] was beyond dispute.  But the task of evaluating their conflicting opinions lay in the first instance with the ALJ in whose presence they testified.  When the ALJ's determination in this case is given its 'due weight,' we see no basis for overturning that determination.  In doing so, the District Court did not heed the 'due weight' standard, and the District Court's finding . . . was clearly erroneous.).

Here, affording the ALJ's consideration of Plaintiff's expert testimony its due weight, the Court cannot find that the ALJ erred in this regard.

> **b.**    ***The ALJ improperly considered testimony about programming that Defendant did not actually propose for R.L., and the ALJ improperly determined that Plaintiff denied Defendant an opportunity to modify its proposed educational plan for R.L.***

Plaintiff contends that the ALJ must assess the IEP actually proposed by Defendant, and not a hypothetical IEP that Defendant could have proposed, and not an IEP that Defendant could have modified.

With regard to the hypothetical IEP, Plaintiff argues that the ALJ improperly relied upon testimony from Defendant that it could have offered R.L. Orton Gillingham ("OG") reading instruction.  Plaintiff contends that OG reading instruction was not included in R.L.'s IEP, R.L. was receiving Wilson reading

instruction at QSH, and Defendant's IEP contained no specialized reading program. Plaintiff argues that the ALJ erred by not discrediting Defendant's testimony regarding how OG instruction could be provided, since it was not included in the IEP.

The Court does not find that the ALJ erred on this issue. The ALJ noted that the Cinnaminson School District used the OG reading system and not the Wilson reading system. (Docket No. 1-3 t 6.) The ALJ also noted that a member of Defendant's child study team found limited distinction between the OG reading system and the Wilson reading system for R.L.'s purposes. (Id. at 8.) The ALJ concluded, "The absence of Wilson-certified personnel in the district does not create a sufficient reason to claim that FAPE is not provided by the Board. Petitioner submitted no evidence that the OG system could not benefit R.L. Petitioner made no showing that the OG system failed to provide educational benefit to R.L." (Id. at 13.)

Plaintiff contends that because neither the OG reading system nor the Wilson reading system was included in the IEP, the ALJ should not have considered whether Defendant could have provided a specialized reading system. Plaintiff, however, presents no evidence that the IEP is deficient because it did not indicate one particular program over another.[5] The record

---

[5] Cf. W.D. v. Watchung Hills Regional High School Bd. of Educ., 602 F. App'x 563, 568 (3d Cir. 2015) ("As noted in the Federal

15

evidence shows that R.L. was under the Wilson system at QSH because that was the program used by QSH, and that if R.L. attended a school in Cinnaminson, she would be under the OG system because that was the program used by the Cinnaminson school district. The record evidence, as assessed by the ALJ, did not show a difference between the two programs as applied to R.L. Defendant's child study team member testified that the OG system was not included in the IEP because after R.L. enrolled in the district, an OG specialist would come and assess her to determine if she required that service, and if so, how often. (Docket No. 17-6 at 110.) The child study team member also confirmed that the absence of a reference to the OG system in the IEP did not indicate that R.L. would not receive it. (Id.)

"[I]n determining whether an IEP was appropriate, the focus should be on the IEP actually offered and not on one that the school board could have provided if it had been so inclined." Lascari v. Board of Educ. of Ramapo Indian Hills Regional High School Dist., 560 A.2d 1180, 1189 (N.J. 1989). The ALJ determined that Defendant offered a reading program effectively identical to the one R.L. was receiving at QSH, and that R.L.

---

Register, "nothing in [the IDEA] . . . requires an IEP to include specific instructional methodologies. . . . The Department[of Education]'s long-standing position on including instructional methodologies in a child's IEP is that it is an IEP Team's decision." 71 Fed. Reg. 46,540, 46,665 (August 14, 2006).").

would receive that reading program if the specialist determined she required it.  The ALJ therefore did not, as Plaintiff argues, consider a hypothetical IEP in the sense that Defendant could have provided the OG reading system if it wanted to, but did not.  Instead, Defendant offered an equivalent reading system to students enrolled in the district who required it. The ALJ did not err on this issue.

Next, with regard to Plaintiff's argument that the ALJ considered a hypothetical IEP by implying that Defendant could modify R.L.'s IEPs after she was enrolled in the district, the Court is unpersuaded.  Plaintiff contends that she and her experts did not feel that Defendant's IEP was appropriate for R.L., and as a result she made the decision to continue R.L. at QSH instead of enrolling in the Cinnaminson school district. Based on her presumption that the IEP was inadequate from the start, Plaintiff faults the ALJ for considering testimony about how the IEP could be modified later depending on how R.L. progressed under the proposed IEP, and argues that the ALJ's conclusion that Defendant's IEP provided R.L. with a FAPE is based on the hypothetically modified-to-suit IEP, and not the one actually offered.

That the ALJ recognized R.L.'s IEPs may be changed in the future depending on her evolving needs does not mean that the ALJ failed to determine whether R.L.'s proposed IEP at that time

provided her with a FAPE.  See, e.g., S.H. v. State-Operated

School Dist. of City of Newark, 336 F.3d 260, 265 (3d Cir. 2003)

(citing 20 U.S.C. § 1414(d)(1)(A)(4)) ("The IEP team is required

to review the IEP at least annually to determine whether the

child is reaching the stated goals.  In addition, the IEP team

is to revise the IEP to address lack of progress, necessary

changes arising from reevaluation of the child, and parental

input, among other things."); S.A. o/b/o G.A. v. Delanco

Township Board of Education, 2004 WL 2266849, at *8 (N.J. O.A.L.

2004) ("Petitioner must bear in mind that an IEP is a document

that continuously evolves as the child grows.").  The ALJ

considered the record before him, an assessment this Court must

view as prima facie correct, and concluded that the IEPs

proposed by Defendant had the capacity to address R.L.'s

educational needs, and provide her with a meaningful educational

benefit.[6]  Plaintiff has not met her burden to show that decision

was incorrect.

---

[6] The ALJ found that Defendant provided R.L. with a FAPE in the
June 2015 IEP and the May 2016 IEP.  (Docket No. 1-3 at 18.)
The ALJ found that Defendant attempted to provide R.L. with a
FAPE for the 2016 extended school year, but that Plaintiff
thwarted Defendant in that regard.  (Id. at 19.)  The ALJ's
determination as to the 2016 extended school year is discussed
in the next section.

      **c.** ***The ALJ improperly held that a determination***
           ***about appropriateness can never be made unless a***
           ***student first tries the program.***

As a corollary to the previous argument, Plaintiff further
contends that the ALJ erred when he found that R.L. must "try
out" Defendant's proposed IEP before any alternative placement
could be considered. Plaintiff argues there is no precedent to
support the ALJ's try-it-out approach. To support her argument,
Plaintiff cites to two passages in the ALJ's decision: "[I]t is
not possible to know whether a district can provide FAPE for a
student until it has had an opportunity to do so."; and
"Determinations regarding whether meaningful educational benefit
can be achieved cannot be made without an educational experience
with the Cinnaminson [district]." (Docket No. 1-3 at 12.)

The Court finds that the context of these sentences and the
ALJ's factual and legal conclusions do not support Plaintiff's
argument that the ALJ created an improper "try-it-out first"
rule in this case. The full context of the ALJ's observations
are set forth here:

> In this case, petitioner argues that the Board did not
> provide FAPE, as it was predisposed to provide an in-
> district program, rather than an out-of-district program,
> or that R.L.'s medical concerns make her ineligible to
> attend an in-district school. Those arguments are not
> accepted by this tribunal. The evidence suggests that it
> is likely that after R.L. had a tumultuous time on
> departing Orchard Friends School, and QSH appeared to work
> for R.L., K.G. did not want to investigate other potential
> educational settings. K.G.'s objections to a placement at
> Cinnaminson clearly reflected genuine concern for R.L.'s

well-being.  Her testimony was influenced by the best
educational interests of the child and a desire to avoid
change until necessary.  However, it is not possible to
know whether a district can provide FAPE for a student
until it has had an opportunity to do so.  There is no
question that a change of school may result in some degree
of tumult to R.L., but such changes are sometimes
necessitated by the circumstances.

(Id. at 12.)

[Tighe's] report goes beyond her area of expertise, and
makes the conclusory opinion that the Board cannot provide
a meaningful educational benefit to R.L.  Her testimony
does not dissuade this tribunal that the Board needs to be
afforded the opportunity to educate R.L.  Determinations
regarding whether meaningful educational benefit can be
achieved cannot be made without an educational experience
with the Cinnaminson [district].  If after exposure to
R.L., modification of the anticipated programs for her
individual needs, and an analysis of meaningful educational
benefit to R.L. it is determined that the in-district
program is not appropriate, other steps may need to be
taken.

(Id.)

The ALJ's comments clearly arose from his determination

that Plaintiff had failed to provide Defendant with a good faith

opportunity to comply with the IDEA, not that it lacked the

ability, will, or capacity to do so.  Rather, the ALJ found that

Defendant prepared a proposed IEP in advance of the child study

team meeting for the 2015-2016 school year, but Plaintiff did

not provide input at that meeting, and she failed to cooperate

with Defendant in working on an IEP for R.L.  (Id. at 14-15.)

The ALJ further found that Plaintiff prevented Defendant from

fully addressing R.L.'s needs or adjusting the IEP to meet her

needs by depriving it of the opportunity to demonstrate the education available to R.L. at Cinnaminson.  Likewise, the ALJ found that Plaintiff denied Defendant the ability to determine if services for the 2016 extended school year were appropriate. (Id. at 18-19.)

"Parents who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition reimbursement for the cost of the alternate placement," but "[t]he IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations."  Cape Henlopen, 606 F.3d at 72.[7]  Moreover, "[t]he core of the statute . . . is the cooperative process that it establishes between parents and schools."  Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005); Lascari, 560 A.2d at 1180 (providing that where a child has been unilaterally placed by his or her parents

---

[7] In contrast to Plaintiff here who wished to retain R.L.'s placement in a private school and rejected the public school education, the impetus for the IDEA came from Congress' concern about the apparently widespread practice by school districts of relegating disabled children to private institutions or warehousing them in special classes.  School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., 471 U.S. 359, 373 (1985).  One purpose of § 1415(e)(3) of the IDEA "was to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings."  Id.

in an educational setting contrary to the IEP, the parents may be entitled to reimbursement, but only if the program proposed in the IEP was inappropriate "and if the parents demonstrate they have acted in good faith"); 20 U.S.C. § 1412(a)(10)(C)(ii). Thus, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 373–74 (1985).

Considering the ALJ's findings as to Plaintiff's lack of participation in the 2015-2016 school year IEP process, and how that thwarted Defendant's efforts to prepare an IEP for R.L. after the 2015-2016 school year, it is evident that the ALJ did not implement a requirement that a student must enroll in a new school district before any alternative placement may be considered. Instead, the ALJ observed that a student who moves into a new district must permit that district to fulfill its obligations under the IDEA to (1) identify a child who is eligible for IDEA services, and once identified, (2) create and implement an IEP based on the student's needs and areas of disability. Munir, 723 F.3d at 426. As the ALJ stated, when a parent does not cooperate in the process, "it is not possible to know whether a district can provide FAPE for a student until it has had an opportunity to do so," and "[d]eterminations

regarding whether meaningful educational benefit can be achieved
cannot be made without an educational experience with the
Cinnaminson [district]."  Indeed, the Third Circuit has directed
that parents are not entitled to an alternative placement for
their child if they have not "first given the public school a
good faith opportunity to meet its obligations."  Cape Henlopen,
606 F.3d at 72 (citing Roland M. v. Concord Sch. Comm., 910 F.2d
983, 995 (1st Cir. 1990) ("The law ought not to abet parties who
block assembly of the required team and then, dissatisfied with
the ensuing IEP, attempt to jettison it because of problems
created by their own obstructionism.")); see also L.G. v. Fair
Lawn Bd. of Educ., 2011 WL 2559547, at *5 (D.N.J. 2011) ("The
fact that the child study team ultimately disagreed with L.'s
parents does not mean that the parents were denied meaningful
participation.  If the standard for measuring meaningful
parental participation was that the parents always prevailed,
there would be no process at all.").

Consequently, the Court finds that the ALJ did not impose a
requirement that a student must "try out" the public school
before an alternative placement could be considered, but rather
made the finding that Plaintiff's lack of cooperation in the
process stymied Defendant's efforts to fulfill its obligations
under the IDEA, which required Defendant to determine, in the
first instance, whether it could provide R.L. with a FAPE in-

district.  The Court will therefore not reverse the decision of the ALJ on this basis.

## CONCLUSION

For the foregoing reasons, the Court will affirm the decision of the ALJ.  Defendant's motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.[8]  An appropriate Order will be entered.


Date: September 19, 2018                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[8] Because the Court has affirmed the ALJ's decision, the Court need not consider whether QSH is an appropriate alternative placement.  The Court also need not consider Defendant's argument that a placement at QSH would violate the Establishment Clause because QSH is a religious institution.  The Court notes, however, that "reimbursement of funds here is to the parents, not a religious school, and, in all events, the sectarian nature of an appropriate school does not preclude reimbursement." Edison Township Board of Education v. F.S., 2017 WL 6627415, at *7 (D.N.J. 2017) (citing L.M. v. Evesham Twp. Bd. of Educ., 256 F. Supp. 2d 290 (D.N.J. 2003) (ordering reimbursement of funds for placement in religious school)); see also B.C. v. Wall Tp. Bd. of Educ., 2013 WL 6498995, at *5 (D.N.J. 2013) (same).